# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARTHA CECILIA      )
FERNANDEZ-GARCIA,      )
     )
     )
     Petitioner,      )
     )      **1:12CV1137**
     v.      )      **2:86CR228-3**
     )
     )
UNITED STATES OF AMERICA,      )
     )
     Respondent.      )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Martha Cecilia Fernandez-Garcia, a former federal prisoner, has filed a Petition for Writ of Coram Nobis (Docket Entry 2) pursuant to 28 U.S.C. § 1651. Respondent (the "Government") has filed a Motion to Dismiss and Response (Docket Entry 7), Petitioner has filed a Reply (Docket Entry 9), and the matter is now before the Court for a ruling.

### Factual and Procedural Background

According to the pleadings, and the documents attached thereto, on December 29, 1986, a grand jury indicted Petitioner and several others with, in pertinent part, conspiracy to distribute cocaine. (Docket Entry 2 ¶9; Docket Entry 7, Ex. 1 at 1-2.) On March 23, 1987, Petitioner pled guilty to this charge pursuant to a plea agreement. (Docket Entry 2 ¶¶10, 13; Docket Entry 7, Ex. 3.) On June 2, 1987, Petitioner was sentenced to five years of

imprisonment. (Docket Entry 2 ¶14, Ex. 1 ¶10; Docket Entry 7, Ex. 4 at 1.) On June 9, 1987, judgment was entered in the District Court. (Docket Entry 7, Ex. 4 at 1.) Petitioner served her sentence and was released. (Docket Entry 2 ¶¶8, 16.) On October 18, 2012, Petitioner filed the instant Petition. (Docket Entry 2.)

### Petitioner's Claims

Petitioner asks the Court to vacate her conviction, which she contends is unconstitutional because (1) her guilty plea was not entered into knowingly, voluntarily, and intelligently, and (2) her counsel failed to file an appeal despite being instructed by Petitioner to do so. (*Id.* ¶2-3.) Specifically, Petitioner, who was eighteen years old when she pled guilty to conspiracy to distribute cocaine, contends that counsel failed to secure an interpreter or fully explain the elements of the offense to which she pled guilty. (*Id.* ¶11.) According to Petitioner, she "did not understand any of the proceedings since no interpreter was ever afforded her. She simply agreed to everything her attorney advise[d]." (*Id.*) Nor, Petitioner continues, did counsel explain to her "what a universal guilty plea was." (*Id.* ¶12.) Furthermore, Petitioner avers that at least part of the reason she pled guilty was because "[i]t was her understanding that if she did not accept the plea the other codefendnats would be upset with her and they would get more prison time" and because her codefendants were threatening her to that effect. (*Id.*) Petitioner asserts too that after she entered her guilty plea, she asked counsel to file an appeal on her behalf, but counsel failed to do so. (*Id.* ¶15.)

Petitioner asserts that she is innocent of the crime to which she pled guilty. (*Id.* at Ex. 1 ¶4.) She contends that this unconstitutional criminal conviction continues to give rise to adverse consequences. (Docket Entry 9 ¶6.) For example, Petitioner asserts that "[s]he

2

cannot obtain U.S. citizenship due to the prior conviction and is in danger of being unlawfully deported if she was to be placed in removal proceedings." (*Id.*) Petitioner asserts further that as a result of the conviction "[s]he has lived most of her life in the shadows working for less than minimum wages and trying to raise a family." (*Id.* ¶8.) She contends that her "only real crime was her poor choice in a relation with an elder man who was involved in a conspiracy to distribute narcotics that got her thrown into some conspiracy she had nothing to do with." (*Id.* ¶9.) Petitioner also asserts that her conviction is an impediment to seeking employment and certain state benefits, such as a business license, and that the resulting stress caused her health to deteriorate. (Docket Entry 9, Ex. 1 ¶¶16-17.)

The Government, in turn, argues that "Petitioner has not alleged any reason why she waited 22 years from the time she was released from prison to file a claim challenging her conviction" and that the "delay and the sheer passage of time weigh heavily against her claims." (Docket Entry 7 at 3-4.) The Government contends further that Petitioner has failed to set forth specific adverse consequences that would be sufficient to justify the exceptional relief of coram nobis. (*Id.* at 4.) The Government also makes the case that Petitioner's claims fail on the merits, because (1) the docket sheet to Petitioner's criminal case indicates that she had an interpreter, thereby disproving her principal contention that she was never afforded an interpreter, and (2) the plea agreement "states that the attorney explained the elements of the offense to her, and that the guilty plea was not the result of any threats or promises" and states further that Petitioner pled guilty because she was in fact guilty. (*Id.* at 4-5.)

3

## Discussion

The power of a federal court to issue a writ of coram nobis is found in the All Writs Act, codified at 28 U.S.C. § 1651(a). *Bereano v. United States*, 706 F.3d 568, 575 (4th Cir. 2013). Section 1651(a) permits the federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[1] *Id.* at 575-76 (citing 28 U.S.C. § 1651(a)). At common law, the writ of coram nobis was available only "to correct errors of fact," enabling a petitioner "to avoid the rigid strictures of judgment finality by correcting technical errors such as happened through the fault of the clerk." *Id.* (quoting *United States v. Denedo*, 556 U.S. 904, 910–11, 129 S.Ct. 2213 (2009) (internal quotation marks omitted)). Today, however, "coram nobis is broader than its common-law predecessor" and "can issue to redress a fundamental error . . . as opposed to mere technical errors." *Id.* at 576 (quoting *Denedo*, 556 U.S. at 911, 129 S.Ct. 2213).

In a recent case, the Fourth Circuit Court of Appeals concluded that to reach the ultimate decision regarding coram nobis relief:

> a petitioner is obliged to satisfy four essential prerequisites. First, a more usual remedy (such as habeas corpus) must be unavailable; second, there must be a valid basis for the petitioner having not earlier attacked his convictions; third, the consequences flowing to the petitioner from his convictions must be sufficiently adverse to satisfy Article III's case or controversy requirement; and, finally, the error that is shown must be "of the most fundamental character."

---

[1] The adoption of Federal Rule of Civil Procedure 60(b) in 1946 abolished the writ of coram nobis in civil cases, however, the writ remains available to challenge criminal convictions. *Bereano*, 706 F.3d at 576, n.8. As the Supreme Court has explained, "[s]uch a motion is a step in the criminal case and not, like habeas corpus where relief is sought in a separate case and record, the beginning of a separate civil [p]roceeding." *Id.* (quoting *United States v. Morgan*, 346 U.S. 502, 505 n. 4, 74 S.Ct. 247 (1954)).

*Bereano*, 706 F.3d at 579 (quoting *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)).

Because Petitioner is no longer in custody, a more usual remedy is not available. *See* 28 U.S.C. §§ 2241 & 2255. Consequently, the first of the abovementioned elements weighs in Petitioner's favor. *See e.g., United States v. Rice*, No. 3:90–cr–00114–MOC, 2013 WL 609625, *3 (W.D.N.C. Feb. 19, 2013) ("A more usual remedy is not available because defendant is no longer in custody. This factor weighs in favor of defendant").

However, the problem with Petitioner's Petition, as the Government correctly points out, is that it fails to set forth a valid basis for Petitioner's exceedingly long delay in attacking her conviction. As explained above, Petitioner pled guilty to conspiracy to distribute cocaine on March 23, 1987, was sentenced on June 2, 1987 to five years of imprisonment, and judgment was entered on June 9, 1987. Petitioner contends that she served her sentence and was released, but the Petition does not state the exact date. The Government correctly points out that the Bureau of Prison Website indicates that Petitioner was released on March 30, 1990. (Docket Entry 7, Ex. 5.)[2] Nothing in the record suggests that Petitioner made any effort to attack her allegedly unconstitutional criminal conviction until she filed the instant Petition on October 18, 2012. (Docket Entry 2.) Thus, the pleadings before the Court indicate that Petitioner waited more than twenty years to file the instant Petition. Nothing in the Petition suggests that Petitioner was unable to raise these claims in a more timely manner. These facts alone are sufficient to justify the granting of the Government's motion

---

[2] The undersigned would reach the same conclusion set forth below (*i.e.*, that this action is untimely), regardless of whether Petitioner was released on March 30, 1990; or five years from the date she was sentenced.

5

to dismiss.[3] Because Petitioner fails to satisfy the second prerequisite for coram nobis relief, the undersigned will not review the third and fourth elements. *See Rice*, 2013 WL 609625, *3 ("As defendant has not made the requisite showing under the second inquiry, the court will not review the third and fourth elements.").

---

[3] *See, e.g., Nordahl v. United States*, 425 F. App'x 35, 36 (2nd Cir. June 20, 2011) (finding that the district court did not abuse its discretion in concluding that a pro se petitioner failed to provide sound reasons for his delay in seeking earlier relief where nearly eight years had passed between the petitioner's conviction and the filing of the coram nobis petition); *Foreman v. United States*, 247 F. App'x 246, 248 (2nd Cir. Sep. 11, 2007) (denying coram nobis petition where petitioner failed to provide sufficient justification for six-year delay in seeking relief); *United States v. Nyhuis*, 40 Fed. App'x 80, 81 (6th Cir. 2002) ("Upon review, we conclude that Nyhuis's petition is barred by the doctrine of laches because an unreasonable period of delay occurred between his sentencing and the filing of the coram nobis petition. In 1990, he would have known of any discrepancy between the plea agreement and his sentence, of his counsel's failure to object to the discrepancy, and of counsel's alleged refusal to file an appeal. Yet, Nyhuis apparently did not raise these arguments until he filed the instant petition in 2000, and he offers no reason for failing to do so. A ten-year delay does not constitute an exercise of reasonable diligence."); *United States v. Eads*, 191 Fed. App'x 709, 711 (10th Cir. Aug. 9, 2006) ("Mr. Eads has failed to show why he has made no attempt to raise the substance of his coram nobis petition at any time for the past sixteen-plus years since his conviction in 1989. Rather, Mr. Eads simply contends that his case warrants special consideration notwithstanding his delay. Such an assertion does not satisfy Mr. Eads' burden to demonstrate due diligence, and for this reason we affirm the dismissal of his petition."); *Foont v. United States*, 93 F.3d 76, 80 (2d Cir. 1996) (concluding that "nearly five years['] delay between time petitioner "knew or should have known . . . of the facts underlying his [coram nobis] claim" and his petition is too much absent "sound reasons for his delay"); *Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983) (denying a coram nobis petition as untimely where the claim could have been raised over two decades earlier and there were no sound reasons for the delay); *Rice*, 2013 WL 609625, *3 ("[D]efendant has failed to show a sound reason for failing to bring this action sooner than 18 years after his release from prison."); *Echendu v. United States*, CV-02-1255 (DGT), 2003 WL 21653370, at *7 (E.D.N.Y. 2003) ("Echendu has known, or should have known, of the facts underlying his current claim for a sufficiently long period of time that an adequate justification is required. Echendu has simply not provided sound reasons for his delay. Consequently, even if Echendu could show that the threat of deportation is a lingering disability redressable by the writ of coram nobis, his petition fails as the result of his unjustified delay. Echendu's second claim of lingering disability, that he is ineligible to become a United States citizen, also fails. Even if Echendu's ineligibility for citizenship would qualify as a lingering disability, that claim suffers the same infirmity as the claim of potential deportation—unreasonable delay.") (citation omitted).

## Conclusion

For the reasons set forth above, the undersigned concludes that Petitioner has failed to establish a valid basis for not having attacked her conviction earlier and that consequently this action should be dismissed.

**IT IS THEREFORE RECOMMENDED** that the Government's Motion to Dismiss (Docket Entry 7) should be granted and that this action be dismissed.

Joe L. Webster
United States Magistrate Judge

September 24, 2013
Durham, North Carolina